HEIN-WERNER CORPORATION *vs.* JACKSON INDUSTRIES, INC.
& another.

Suffolk.    September 19, 1973. — January 28, 1974.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Statute,* Construction, Retroactive statute. *Motor Vehicle,* What constitutes, Dealer, Manufacturer. *Words,* "Motor vehicle."

Chapter 93B of the General Laws, inserted by St. 1970, c. 814, § 1, purporting to regulate business practices among motor vehicle manufacturers, distributors and dealers, does not apply to a contract which antedates the enactment of c. 93B. [524-525]

The term "motor vehicle" as used in G. L. c. 93B, § 1 (a), and as appearing elsewhere in c. 93B, is defined in c. 90, § 1. [526-529]

The power granted to a dealer in Massachusetts under a contract with a manufacturer to accept orders from it to purchase and resell its construction equipment which was mounted on wheels and adapted for movement on highways and came within the definition of "motor vehicles" in G. L. c. 90, § 1, brought the business dealings between the parties within the application of c. 93B, notwithstanding the fact that only construction equipment which was mounted on tank treads and not on wheels was supplied to the dealer by the manufacturer. [529-530]

QUESTIONS OF LAW certified to the Supreme Judicial Court by the United States District Court for the District of Massachusetts.

*James F. McHugh* for the plaintiff.

*Cornelia C. Adams* (*Robert H. Goldman* with her) for the defendants.

HENNESSEY, J. Pursuant to S.J.C. Rule 3:21 (359 Mass. 790, approved October 29, 1971), entitled "Uniform Certification of Questions of Law," the Chief Judge of the United States District Court, District of Massachusetts, has certified three questions to this court. All of the questions relate to construction of G. L. c. 93B, inserted by St. 1970, c. 814, § 1, a chapter which purports to regulate business practices between motor vehicle manufacturers, distributors and dealers. The chapter took effect on January 1, 1971. The three questions pose issues of first impression.

On November 22, 1967, the plaintiff Hein-Werner Corporation (Hein-Werner) and the defendant Jackson Industries, Inc. (Jackson) entered into a written contract. Essentially, the contract granted to Jackson the right to purchase and resell certain equipment manufactured by Hein-Werner. Thereafter the parties had various dealings with respect to such equipment.

In 1971 Hein-Werner filed a complaint against Jackson in the United States District Court, District of Massachusetts, seeking to recover sums allegedly due by reason of dealings under the contract. In a counterclaim, Jackson asserted, inter alia, that Hein-Werner had terminated the contract in violation of G. L. c. 93B, and that Hein-Werner in certain other respects had acted in violation of that chapter.

It appears that the contract antedated the enactment of G. L. c. 93B. Presumably our answer to Question 1 will be dispositive of all issues concerning c. 93B raised in the Federal case, since in that first answer we have ruled that c. 93B does not apply retroactively to such a contract. Nevertheless, we have also answered Question 2, since we consider it useful for us to deal with the issue raised by that question, viz., the scope of the applicability of c. 93B. We have declined to answer Question 3, for reasons which appear later in this opinion.

1. Question 1 asks: "Does Massachusetts G. L., ch. 93B apply to a contract which antedates the enactment of 93B?" Our answer is, "No."

Chapter 93B became effective about three years after the

parties entered into their contract. If that chapter were applied to the contract it would substantially revise the relationships between the parties. For example, it would transform the contract from one terminable without cause by either party on thirty days written notice into one terminable only on a showing of "due cause." G. L. c. 93B, § 4 (3) (c).

The general rule of interpretation is that all statutes are prospective in their operation, unless an intention that they shall be retrospective appears by necessary implication from their words, context or objects when considered in the light of the subject matter, the preëxisting state of the law and the effect upon existent rights, remedies and obligations. *Hanscom* v. *Malden & Melrose Gas Light Co.* 220 Mass. 1, 3 (1914). It is only statutes regulating practice, procedure and evidence, in short, those relating to remedies and not affecting substantive rights, that commonly are treated as operating retroactively, and as applying to pending actions or causes of action. *Mulvey* v. *Boston,* 197 Mass. 178 (1908). *Adams* v. *Adams,* 211 Mass. 198 (1912). *American Locomotive Co.* v. *Hamblen,* 217 Mass. 513 (1914).

Nothing appears, expressly or by implication, to indicate that c. 93B was intended to have retroactive effect, and therefore we treat it as operating prospectively only. Accordingly, we answer Question 1 in the negative.

In view of what we have said, it is unnecessary for us to deal with the further contention that a retroactive application of c. 93B to the contract, and the resulting substantial alterations that statute would work upon existing contractual rights, would be unconstitutional.

2. Question 2 is as follows: "Does ch. 93B apply to the dealership agreement between Hein-Werner Corp. and Jackson Industries through which Jackson Industries had the power to accept orders for construction equipment mounted on wheels and adapted for movement on highways, in light of the fact that only crawler mounted construction equipment, i.e., equipment which was mounted on tank treads and not on wheels, was supplied to Jackson by Hein-Werner?"

The answer to this question emerges only after detailed reasoning, involving terms and definitions from the statutes, as well as a consideration of the contract and the dealings between the parties. First of all, c. 93B applies only to the regulation of business practices concerning "motor vehicles." See § 2. If the statute applies to the litigants here, it applies to Hein-Werner as a "manufacturer" engaged in the business of manufacturing or assembling new and unused motor vehicles, and to Jackson as a "motor vehicle dealer" who sells or solicits or advertises the sale of new or used motor vehicles. See § 1 (b) and (h).

The keystone term "motor vehicle" is defined as "any motor driven vehicle required to be registered under chapter ninety." C. 93B, § 1 (a). Chapter 90, in turn, provides (in § 9) that no motor vehicle shall be permitted to be operated, pushed, drawn or towed upon or allowed to remain on any "way" unless such vehicle is registered. Five specific exceptions to this requirement are provided.[1] Definitions of both "motor vehicles" and "way" are found in c. 90, § 1.[2]

No motor vehicles are required by the terms of c. 90 to be registered simply by virtue of their status as such. Instead,

---

[1]Chapter 90, § 9, provides detailed exceptions for (1) out of State vehicles, (2) a 48 hour year end change of registration period, (3) short distance use of an agricultural or industrial vehicle between two properties of the vehicle's owner, (4) unloading and short distance delivery to a dealer, and (5) certain short distance uses of earth-moving vehicles.

[2]" 'Motor vehicles,' all vehicles constructed and designed for propulsion by power other than muscular power including such vehicles when pulled or towed by another motor vehicle, except railroad and railway cars, vehicles operated by the system known as trolley motor or trackless trolley under chapter one hundred and sixty-three or section ten of chapter five hundred and forty-four of the acts of nineteen hundred and forty-seven, vehicles running only upon rails or tracks, vehicles used for other purposes than the transportation of property and incapable of being driven at a speed exceeding twelve miles per hour and which are used exclusively for the building, repair and maintenance of highways or designed especially for use elsewhere than on the travelled part of ways, wheelchairs owned and operated by invalids and vehicles which are operated or guided by a person on foot. In doubtful cases, the registrar may determine whether or not any particular vehicle is a motor vehicle as herein defined. If he determines that it should be so classified, he may require that it be registered under this chapter, but such determination shall not be admissible as evidence in any action at law arising out of the use or operation of such vehicle previous to such determination."

" 'Way,' any public highway, private way laid out under authority of statute, way dedicated to public use, or way under the control of park commissioners or body having like powers."

c. 90 prohibits certain uses unless the motor vehicle is registered. From this it can be argued that there are no "motor vehicles" within the meaning of c. 93B. It would follow from this that there are no "manufacturers" or "motor vehicle dealers" within the meaning of c. 93B, §§ 1 (b) and 1 (h), respectively. Such a construction would effectively nullify the entire chapter and thus is not to be favored. *Commissioner of Corps. & Taxn.* v. *Springfield,* 321 Mass. 31, 37-38 (1947). *Johnson* v. *Commissioner of Pub. Safety,* 355 Mass. 94, 99 (1968).

It can also be argued that a vehicle becomes a c. 93B motor vehicle only at the time it is first used on a public way in a manner which requires its registration under c. 90. This construction would make c. 93B impossible to administer, since in the normal course of events the registration of vehicles occurs at a time after they have passed beyond the control of the parties sought to be regulated by c. 93B. Such an interpretation would permit application of c. 93B to a manufacturer because of a purchaser's use of a vehicle perhaps months or years after its sale by a dealer.

Hein-Werner urges that the legislative intent in enacting c. 93B was to provide regulation of the relationship between automobile dealers and automobile manufacturers in the commonly accepted usage of those terms. See Brown, A Bill of Rights for Auto Dealers, 12 B. C. Industrial & Commercial L. Rev. 757, 760-776, 822 (1971). The argument is that an "automobile" owner will be required to register his vehicle under the provisions of c. 90 if he is to make effective use of it. Thus registration of such vehicles is a virtual certainty. Acceptance of the foregoing interpretation of the definition of "motor vehicle" as contained in c. 93B would clearly exclude both Hein-Werner and Jackson from the regulation of that statute. There is no suggestion that the parties dealt or had power to deal in "automobiles" as that term is commonly used.

We reject the foregoing interpretation. First of all, we believe that it does not comport with the albeit imperfectly expressed legislative intent as we have identified it. Further-

more, in our view it leaves the standards for the application of c. 93B both imprecise and difficult or impossible to administer. Common usage of the word "automobile" permits a substantial measure of certainty in understanding, but it also leaves large potential areas of dispute as to the scope of the description.

We hold that the term "motor vehicle" as used in c. 93B, § 1 (a), and wherever that term otherwise appear in that chapter, is defined as shown in c. 90, §1, and as that definition is quoted in the margin, *supra,* fn. 2.

In so holding we adopt the clarity and precision of a standard already in operational administrative use. It is fair to infer that the Legislature intended to be definite and precise rather than to follow the indefiniteness and difficulty of administration inherent in any of the suggested alternative meanings.

Our conclusion is supported by a review of the legislative history of the statute. Before its enactment, the bill which was to become c. 93B was changed by the deletion of the words "of the type" in the crucial definition in § 1 (a), as follows: "'motor vehicle,' any motor driven vehicle [of the type] required to be registered under chapter ninety." If viewed as an intentional substantive change, this seems to narrow the scope of the term "motor vehicle" and to require a literal reading of the words "required to be registered under chapter ninety," with all the problems inherent in such a reading. From a review of the entire history, however, we believe that the change was one of mere form and style. As such it is reflective of legislative intent, since reading the three words back in clarifies the intended meaning. "The type" of motor vehicles which may be required to be registered under c. 90 are those defined in § 1 of that statute, as quoted in fn. 2, *supra.* This in turn imports the definition of "motor vehicle" in c. 90, § 1, into c. 93B.

We appreciate that our construction makes the incidence of c. 93B in some respects broader than that of c. 90. This is true because the definition which is applied in c. 93B by importation from c. 90, § 1, may not be rendered nugatory by

the manner of use of the vehicle; nor is the operative definition subject to the several exceptions in c. 90, § 9, which may apply in determining the applicability of that chapter. Nevertheless, the broad view we have taken is, for practical purposes, a necessary one. The alternative view, as we have shown above, would either nullify the effect of c. 93B or would render its operation difficult or even impossible.

We appreciate also that the definition as we have construed it is broader than a description of "automobiles" in the usual understanding of that word. Nevertheless, the words of exclusion in c. 90, § 1, confine the class to "motor vehicles" within the common usage of that term. We emphasize here the language of exclusion, viz.: "vehicles used for other purposes than the transportation of property and incapable of being driven at a speed exceeding twelve miles per hour and which are used exclusively for the building, repair and maintenance of highways or designed especially for use elsewhere than on the traveled part of ways . . .." Beyond doubt, this definition includes only the vehicles which are designed for regular use in the transportation of persons and property on the traveled part of public highways. Just as clearly, many kinds of special vehicles, such as tracked vehicles used in construction work, are excluded. Cf. *Lincoln* v. *Shea,* 361 Mass. 1, 3-4 (1972).

A further issue arises as to whether, even in the light of our definition of "motor vehicle," c. 93B applies to a contract of the type between the parties here. The statement of facts submitted to us establishes that only equipment which was mounted on tank treads and not on wheels was supplied to Jackson by Hein-Werner. However, Question 2 also establishes in its phrasing that Jackson had the power under the contract to accept orders for construction equipment mounted on wheels and adapted for movement on highways. Even with these circumstances established, it is not clear that Jackson had the power to accept orders for motor vehicles as defined in c. 90, § 1, which is the definition we have applied in construction of c. 93B. For example, under c. 90, § 1, wheeled vehicles adapted for movement on the

highways are not considered to be motor vehicles if they qualify as highway repair, maintenance and construction equipment of a certain kind. There are other specified exemptions from the definition.

For the purpose of giving a definitive answer to Question 2, we proceed under the assumption that Jackson had power to accept orders for motor vehicles within the definition of c. 90, § 1. Acting under that assumption, it is clear that c. 93B applies to the relationship here, by reason of the provisions of § 2 of c. 93B. By the terms of § 2, that chapter applies to a person who "engages directly or indirectly in purposeful contacts within this commonwealth in connection with the offering or advertising for sale or has business dealings with respect to a motor vehicle within the commonwealth . . .." Clearly, it is not necessary to show that the parties have actually bought and sold appropriate motor vehicles. That Jackson had the power to accept orders for such motor vehicles is sufficient to establish the status of Hein-Werner as one who made an offer of c. 93B motor vehicles and to establish that the parties had business dealings with respect to c. 93B motor vehicles within the Commonwealth.[3] Parties who do not intend to deal in c. 93B "motor vehicles" can easily, by clear language in the contract, avoid the applicability of c. 93B.

Our answer to Question 2 is, "Yes."

3. Question 3 is: "If ch. 93B applies to a contract which antedates the enactment of said chapter, does ch. 93B violate the Massachusetts or United States Constitution?" We have ruled that the statute does not have retroactive effect. Thus, by the very terms of Question 3, we are not requested to answer it, and we therefore do not do so.

4. In summary, we need not answer Question 3. We answer Question 1, "No." We answer Question 2, "Yes." The Reporter of Decisions is to furnish attested copies of this opinion to the clerk of this court. The clerk in turn will transmit one copy, under the seal of this court, to the clerk of

---

[3]We observe also that § 8 of c. 93B makes the chapter applicable to "all written or oral agreements" between such parties.

the United States District Court, District of Massachusetts, as answer to the questions certified, and will also transmit a copy to each party.

*So ordered.*