500 A.2d 1194

**RUDOLPH ROSA, INC., Eastwood Beer Distributors, Inc., and Mosso Beverage, Inc., Appellees,**

**v.**

**LATROBE BREWING COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued April 11, 1985.

Filed Nov. 15, 1985.

552

Daniel I. Booker, Pittsburgh, for appellant.

Thomas R. Betz, Pittsburgh, for appellees.

Before WIEAND, CIRILLO and JOHNSON, JJ.

WIEAND, Judge:

This appeal requires that we interpret 1980 amendments to the Pennsylvania Liquor Code and determine their effect on distributing rights agreements in existence prior to the effective date of such amendments.

The appellant, Latrobe Brewing Company, brewers of Rolling Rock beer, and the appellees, Rudolph Rosa, Inc. (Rosa), Eastwood Beer Distributors, Inc. (Eastwood), and Mosso Beverage, Inc. (Mosso) had been parties to agreements entered circa 1966 by which appellant had designated appellees as distributors of its beer in Latrobe and surrounding areas in Westmoreland County. The appointments were for indefinite periods, but each agreement

contained a provision that it could be cancelled and the distributorship terminated upon notice by either party.

On June 22, 1980, the Governor approved Act Number 1980–73. By this statute, the legislature amended the Liquor Code,[1] effective in sixty days, by adding the following:

(d)(1) All distributing rights as hereinabove required shall be in writing, shall be equitable in their provisions and shall be substantially similar as to terms and conditions with all other distributing rights agreements between the manufacturer giving such agreement and its other importing distributors and distributors shall not be modified, cancelled, terminated or rescinded by the manufacturer without good cause, and shall contain a provision in substance or effect as follows: "The manufacturer recognizes that the importing distributor and distributor are free to manage their business in the manner the importing distributor and distributor deem best and that this prerogative vests in the importing distributor and distributor the exclusive right to establish a selling price, to select the brands of malt or brewed beverages they wish to handle and to determine the efforts and resources which the importing distributor and distributor will exert to develop and promote the same of the manufacturer's products handled by the importing distributor and distributor. However, the manufacturer expects that the importing distributor and distributor will price competitively the products handled by them, devote reasonable effort and resources to the sale of such products and maintain a reasonable sales level." "Good Cause" shall mean the failure by any party to an agreement, without reasonable excuse or justification, to comply substantially with an essential, reasonable and commercially acceptable requirement imposed by the other party under the terms of an agreement.

(2) After January 1, 1980, no manufacturer shall enter into any agreement with more than one distributor or importing distributor for the purpose of establishing

1. Act of April 12, 1951, P.L. 90, as amended, 47 P.S. §§ 1–101 et seq.

more than one agreement for designated brand or brands of malt or brewed beverages in any one territory. Each franchise territory which is granted by a manufacturer shall be geographically contiguous.

(3) Except for discontinuance of a brand or a valid termination for good cause, the purchaser of the assets of the manufacturer as defined in this act shall become obligated to all the territorial and brand designations of the agreement in effect on the date of purchase. Purchase of assets as defined for the purposes of this act shall include, but not be limited to, the sale of stock, sale of assets, merger, lease, transfer or consolidation.

(4) The court of common pleas of the county wherein the licensed premises of the importing distributor or distributor are located is hereby vested with jurisdiction and power to enjoin the modification, rescission, cancellation or termination of a franchise or agreement between a manufacturer and an importing distributor or distributor at the instance of such importing distributor or distributor who is or might be adversely affected by such modification, rescission, cancellation or termination, and in granting an injunction the court shall provide that no manufacturer shall supply the customers or territory of the importing distributor or distributor by servicing the territory or customers through other importing distributors or distributors or any other means while the injunction is in effect: Provided, however, That any injunction issued under this subsection shall require the posting of sufficient bond against damages arising from an injunction improvidently granted and a showing that the danger of irrevocable loss or damage is immediate and that during the pendency of such injunction the importing distributor or distributor shall continue to service the accounts of the manufacturer in good faith.

(5) *The provisions of this subsection shall not apply to Pennsylvania manufacturers whose principal place of business is located in Pennsylvania unless they name or constitute a distributor or importing distribu-*

> *tor as a primary or original supplier of their products subsequent to the effective date of this act, or unless such Pennsylvania manufacturers have named or constituted a distributor or importing distributor as a primary or original supplier of their products prior to the effective date of this act, and which status is continuing when this act becomes effective.*

Act of June 22, 1980, P.L. 253, § 1, 47 P.S. § 4–431(d) (emphasis added) (amending Act of April 12, 1951, *supra*, § 431, 47 P.S. § 4–431). Section 2 of the same Act of 1980, also effective in sixty days, added subsection (19) to Section 4–492 of the Liquor Code, making it unlawful

(19) For any manufacturer or any officer, agent or representative of any manufacturer to modify, cancel, terminate, rescind or not renew, without good cause, any distributing rights agreement, and in no event shall any modification, cancellation, termination, rescission or non-renewal of any distributing rights agreement become effective for at least ninety (90) days after written notice of such modification, cancellation, termination, rescission or intention not to renew has been served on the affected party and board by certified mail, return receipt requested, except by written consent of the parties to the agreement. The notice shall state all the reasons for the intended modification, termination, cancellation, rescission or nonrenewal. The distributor or importing distributor holding such agreement shall have ninety (90) days in which to rectify any claimed deficiency, or challenge the alleged cause.

If the deficiency shall be rectified within ninety (90) days of notice, then the proposed modification, termination, cancellation, rescission or nonrenewal shall be null and void and without legal effect.

If the notice states as one of the reasons for the intended modification, cancellation, termination, rescission or renewal that the importing distributor or distributor's equipment or warehouse requires major changes or additions, then if the distributor or importing distributor shall

have taken some positive action to comply with the required changes or additions, the distributor or importing distributor shall have deemed to have complied with the deficiency as set forth in the notice. The notice provisions of this section shall not apply if the reason for termination, cancellation or nonrenewal is insolvency, assignment for the benefit of creditors, bankruptcy, liquidation, fraudulent conduct in its dealings with the manufacturer, revocation or suspension for more than a thirty (30) day period of the importing distributor or distributor license.

Act of June 23, 1980, *supra*, § 2, 47 P.S. § 4–492(19).

On August 16, 1980, prior to the effective date of these amendments, Latrobe Brewing Co. entered new agreements with Rosa and Mosso; and on August 19, 1980, also prior to the effective date of the amendments, a new agreement was entered with Eastwood. Each agreement named the distributor as "secondary importing distributor or distributor for [appellant's] Rolling Rock Premium Beer" in Westmoreland County. The intent was that appellant, a Pennsylvania manufacturer, should continue to act as primary or original distributor of its product as contemplated by Section 4–431(b) of the Liquor Code, Act of April 12, 1951, *supra*, § 431, as amended, 47 P.S. § 4–431(b). Each agreement also contained an express provision that "[the] agreement may be cancelled immediately upon written notice by either party."

During the summer of 1983, appellant's employees in Latrobe went on strike. Appellant, therefore, obtained and distributed beer that had been brewed out of state and bottled under the Rolling Rock label. Appellees refused to handle it. After the strike had been settled, appellant terminated its distributing agreements with appellees, effective immediately, and named another distributor for its product in the Latrobe area.

An amicable action was commenced in the Court of Common Pleas of Westmoreland County to determine whether appellant's immediate termination of appellees' distributing

rights agreements had been in violation of Section 492(19) of the Liquor Code. Acting on stipulated facts, the trial court held that Section 492(19) was binding upon appellant and that its attempt to terminate appellees' distributing agreements had been "in contravention of that section by failing to give [appellees] ninety (90) days notice of the termination and by failing to afford the [appellees] the opportunity to rectify the claimed deficiency." Judgment was entered, and this appeal followed.

Appellant's attempted termination of appellees' distributing rights agreements without complying with the terms of Section 492(19) is conceded. It is equally clear that Section 431(d)'s proscriptions against terminating distributing rights agreements without cause have no application to the agreements in this case, for they were expressly excluded by Section 431(d)(5). Appellant argues that Sections 492(19) and 431(d) must be read in pari materia. Therefore, appellant argues, the provisions of both 492(19) and 431(d) are inapplicable to

Pennsylvania manufacturers whose principal place of business is located in Pennsylvania unless they name or constitute a distributor ... as a primary or original supplier of their products subsequent to the effective date of this [amendatory] act, or unless such Pennsylvania manufacturers have named or constituted a distributor ... as a primary or original supplier of their products prior to the effective date of this [amendatory] act, and which status is continuing when this [amendatory] act becomes effective.

See: Act of June 22, 1980, *supra*, § 1, 47 P.S. § 431(d)(5). The agreements entered with appellees prior to the effective date of the Act, appellant argues, specifically named appellees "secondary distributors" so that appellant could continue to act as "primary or original" supplier of its product in Westmoreland County. Appellant argues further that the legislature did not intend that Section 492(19) should have retrospective application so as to alter existing agreements which permitted termination at will by either

party. Otherwise, appellant suggests, the amendment to Section 492 would constitute an impairment of contracts in violation of constitutional guarantees.

We agree with appellant that there is an ambiguity, if not an inconsistency, which has been created by Sections 431(d) and 492(19). The trial court, reading the two provisions separately, concluded that the legislature, by adopting Section 492(19) had intended to go beyond the express language of Section 431(d) and make unlawful the immediate termination of a distributor's rights agreement even under circumstances which the legislature had expressly excluded from Section 431(d)'s proscription against the termination of distributor's rights agreements without cause.

The function of this Court, of course, is to ascertain and effectuate the intention of the legislature. *Commonwealth v. Fisher,* 485 Pa. 8, 12, 400 A.2d 1284, 1287 (1979); *Sohmer v. Sohmer,* 318 Pa.Super. 500, 505, 465 A.2d 665, 667 (1983); 1 Pa.C.S. § 1921(a). In doing so, we must view the statute in its entirety. *Causer v. Mandarino,* 338 Pa.Super. 564, 568, 488 A.2d 36, 38 (1985). Each section must be read with reference to and in light of other sections of the same statute. *Commonwealth v. Mlinarich,* 345 Pa.Super. 269, 283–285, 498 A.2d 395, 402 (1985). When parts of the same statute relate to the same persons or things, they are to be construed together, if possible, as one statute. *City of York v. Reihart,* 475 Pa. 151, 156, 379 A.2d 1328, 1330 (1977); 1 Pa.C.S. § 1932. "Because the object of the rule is to ascertain and carry into effect the legislative intent, it proceeds upon the supposition that the several [parts] were governed by one spirit and policy, and were intended to be consistent and harmonious.... Under this rule, each ... section is construed in the light of, with reference to, or in connection with, other ... sections." 73 Am.Jur.2d, Statutes § 187 (1974) (footnotes omitted). *"Application of the rule ... is most justified, and light from that source has the greatest probative force, ... especially if [sections pertaining to the same subject matter] were passed or approved or take effect on the same day.... In these*

*situations the probability that acts [or sections of the same act] relating to the same subject matter were actuated by the same policy is very high, for in the ... situations mentioned they were passed by the same men...."* Turner v. May Corp., 285 Pa.Super. 241, 250, 427 A.2d 203, 207 (1981), quoting 2A Sutherland Statutory Construction § 51.03 at 299 (4th ed. 1973) (emphasis added).

▮ Subsection (d) of Section 431 of the Liquor Code sought to regulate distributing rights agreements and protect distributors from becoming totally subservient to the will of the manufacturer. Thus, after the effective date of the amendment, distributing rights agreements were to be subject to termination by the manufacturer only upon "good cause." Courts of common pleas were authorized to enjoin terminations which were not based on "good cause." Subsection (d)(5), however, provided expressly that the provisions of 431(d) should not apply to a Pennsylvania manufacturer, whose principal place of business was in Pennsylvania, unless it named or constituted a distributor as "primary or original supplier of [its] products." The purpose of this exclusion was, as explained by Senator Zemprelli, to permit "a Pennsylvania manufacturer to act as the primary or original supplier of his products for any designated area, including the entire Commonwealth of Pennsylvania, if he so desires." Legislative Journal, 164 General Assembly, Senate, Vol. 2, No. 36, at 1743 (June 3, 1980). The significance of the section is, inter alia, that the "good cause" requirement does not apply to Pennsylvania manufacturers unless they name a distributor as a primary or original supplier. *Matt Lamb & Sons, Inc. v. Christian Schmidt Brewing Co.*, 336 Pa.Super. 341, 349, 485 A.2d 836, 840 (1984).

In Section 492(19), the legislature gave meaning to the proscription of Section 431(d) and elected to enforce it by imposing upon the manufacturer a notice procedure which was made a prerequisite to any termination of a distributing rights agreement. Thus, the legislature made it "unlawful" to terminate "any distributing rights agreement" without

cause and provided that, except by written consent of the parties, termination was not to become effective until after ninety days' written notice had been given. During that ninety day period, the distributor could "rectify any claimed deficiency or challenge the alleged cause."

█ The language used by the legislature in Section 492(19), it must be conceded, is broad. It is necessary, nonetheless, to determine whether the legislature intended by this section to reinstate the "for cause" requirement to situations where it had said in Section 431(d)(5) that the "for cause" requirement should have no application. We conclude, after lengthy consideration and a review of the entire statute, that the legislature did not intend such an absurd result. Simply stated, the legislature intended to exclude the application of the "for cause" requirements of the statute, whether included in Sections 431(d) or 492(19),

> to Pennsylvania manufacturers whose principal place of business is located in Pennsylvania unless they name or constitute a distributor ... as a primary or original supplier of their products subsequent to the effective date of [the] act, or unless such Pennsylvania manufacturers have named or constituted a distributor ... as a primary or original supplier of their products prior to the effective date of [the] act, and which status is continuing when this act becomes effective.

Act of June 22, 1980, *supra*, § 1, 47 P.S. § 4–431(d)(5). Only in this manner can we interpret the several parts of the amending statute consistently and harmoniously.

Prior to the effective date of the statute, appellant, a Pennsylvania manufacturer whose principal place of business was in Pennsylvania, entered new agreements with appellee-distributors. By the terms of those agreements, the distributors were named secondary distributors of appellant's products in Westmoreland County; and appellant reserved to itself the right to act as primary or original distributor of its products. The agreements provided further that appellant's appointment of the appellee-distribu-

tors "may be cancelled immediately upon written notice by either party."

■ To rely upon Section 492(19) to prevent appellant to terminate its agreements with appellees would require that we apply the amendment retroactively to strike down the right, granted by contract, to terminate the distributing rights agreement immediately upon notice. This would run afoul of the principle that no statute is to be "construed to be retroactive unless clearly and manifestly intended by the [legislature]." *Krenzelak v. Krenzelak*, 503 Pa. 373, 380, 469 A.2d 987, 990 (1983). A statute acts retrospectively if a vested right or contractual obligation is altered or affected. *Burger v. Unemployment Compensation Case*, 168 Pa.Super. 89, 94, 77 A.2d 737, 739 (1951). Appellant argues, and we agree, that to require termination of these distributing rights agreements only upon a showing of cause and after ninety days notice would be to apply the amendment retroactively to alter existing contracts.

■ We also agree with appellant that the legislature did not intend Section 492(19) to have this retroactive effect. Where the application of a statute would make a substantive change in the rights and obligations of the parties, it is presumed that the legislature intended its provisions to have no application to contracts existing prior to the effective date of the law. See: *Southwest Distributing Co. v. Olympia Brewing Co.*, 90 N.M. 502, 508, 565 P.2d 1019, 1025 (1977). See also: *McAleer Buick-Pontiac Co. v. General Motors Corp.*, 95 Ill.App.3d 111, 50 Ill.Dec. 500, 419 N.E.2d 608 (1981); *Hein-Werner Corp. v. Jackson Industries, Inc.*, 364 Mass. 523, 306 N.E.2d 440 (1974); *Scuncio Motors, Inc. v. Subaru of New England, Inc.*, 715 F.2d 10 (1st Cir.1983) (applying Rhode Island law); *Excello Wine Co. v. Monsieur Henri Wines, Ltd.*, 474 F.Supp. 203 (S.D. Ohio 1979). In general, new laws which have the effect of adding requirements or limiting the reasons for terminating franchise or distributing rights agreements are deemed to

effect substantive changes and not merely procedural changes. See: *Coulter Pontiac, Inc. v. Pontiac Motor Div., General Motors Corp.*, 4 Ohio App.3d 169, 170–172, 446 N.E.2d 1128, 1130–1131 (1981). The ninety day notice requirement of Section 492(19), even though facially procedural, exists only to give substance to the requirement that distributing rights agreements be terminated only for "good cause." We are directed, therefore, to presume that the legislature did not intend to make it apply retroactively to contractual provisions in effect prior to the effective date of the statutory amendment.

■ The legislature has not expressly made Section 492(19) or other substantive provisions of the amendatory statute retroactive. Rather, its affirmative decision to postpone the effective date of the Liquor Code amendments for sixty days suggests an intent to allow Pennsylvania manufacturers to enter contracts expressly permitted by the statute. See: *Mobil Oil Corp. v. Rubenfeld*, 40 N.Y.2d 936, 390 N.Y.S.2d 57, 358 N.E.2d 882 (1976). In any event, in the absence of an expressly stated legislative intent to apply the statute retroactively, we will not infer that Section 492(19) was to be applied retroactively to render unlawful pre-existing contractual rights to terminate a distributorship immediately and without notice. See: *Centre Beverage Co. v. Miller Brewing Co.*, No. 83–0459, slip op. at 4 (M.D.Pa. Nov. 3, 1983), aff'd for other reasons at 746 F.2d 1465 (3d Cir. Sept. 4, 1984). See also: *Excello Wine Co. v. Monsieur Henri Wines, Ltd.*, *supra*.

Because we conclude that Section 492(19) is not to be applied retroactively to alter pre-existing contractual rights allowing termination of distributorship agreements, we do not decide whether retroactive application would have constituted an unconstitutional interference with the right of contract.

The order entering judgment for appellee distributors is reversed.