**SHEWAK DISTRIBUTOR, INC., Gelfo Distributing Company, and Carl D'Atri, trading and doing business as Aliquippa Beer Distributing, Appellants,**

v.

**KEYSTONE BREWING L.L.C., trading and doing business as Pittsburgh Brewing Company, Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 24, 1997.

Filed Jan. 8, 1998.

Wendelynne J. Newton, Pittsburgh, for appellants.

Luther E. Weaver, III, Philadelphia, for appellee.

Before DEL SOLE, EAKIN and HESTER, JJ.

EAKIN, Judge:

Shewak Distributing Inc., Gelfo Distributing Company, and Carl D'Atri, trading as Aliquippa Distributing, appeal from an order entered in the Court of Common Pleas of Beaver County (Mannix, J. presiding) dissolving a special injunction and denying their request for a preliminary injunction. We affirm.

Appellants are licensed under the Pennsylvania Liquor Code, 47 P.S. Section 1–101, *et*

*seq.*, to distribute brewed and malt beverages. Appellee, Pittsburgh Brewing Company ("PBC"), is a Pennsylvania manufacturer of brewed and malt beverages, including the renowned beers Iron City and I.C. Light. In November, 1994, the parties entered into the following letter agreement:

> In accordance with Section 431(b) of the Pennsylvania Liquor Code and Regulation 9.96 of the Pennsylvania Liquor Control Board, [PBC] is constituted as the "primary or original supplier" of its products in the entire Commonwealth of Pennsylvania and your distributorship is hereby constituted as a secondary distributor of malt beverage products of the [PBC] and the territory identified on the attached Schedule "A".[1]

> This letter does not constitute a franchise agreement. Specifically, it does not constitute an agreement governed by Section 431(d)(104) [sic] of the Pennsylvania Liquor Code. The distribution agreements set forth herein may be terminated immediately upon written notice by either party.

On August 29, 1996, PBC notified appellants it was immediately canceling the distribution agreement. Alleging such termination was in violation of the Liquor Code,[2] appellants moved for and were granted a special injunction September 4, 1996; appellants contemporaneously filed a complaint for damages. Hearings were held to determine whether an injunction should be imposed under Section 4–431(d)(4) of the Liquor Code. On February 13, 1997, the trial court determined appellants did not qualify for such an injunction, and denied appellants' request for relief. This timely appeal followed.

■ When reviewing the grant or denial of a preliminary injunction, we are limited to determining whether the trial court's decision is supported by "any apparently reasonable grounds." *Matt Lamb & Sons v. Christian Schmidt Brewing Co.*, 336 Pa.Super. 341, 349, 485 A.2d 836, 840 (1984). We will disturb the court's decision only where no grounds exist to support its decision such that its ruling was "palpably erroneous or a misapplication of the law." *Id.*

■ Appellants sought injunctive relief under Section 4–431(d)(4) of the Liquor Code, which provides,

> [t]he court of common pleas of the county wherein the licensed premises of the importing distributor or distributor are located is hereby vested with jurisdiction and power to enjoin the modification, cancellation, termination of a franchise or an agreement between a manufacturer and an importing distributor or distributor at the instance of such importing distributor or distributor who is or might be *adversely affected* by such modification, rescission, cancellation or termination.

(emphasis supplied). Application of that provision depends upon, *inter alia*, whether a distributor has been "named or constituted" as a primary or original supplier:

> The provisions of this subsection shall not apply to Pennsylvania manufacturers whose principal place of business is located in Pennsylvania *unless they name or constitute a distributor or importing distribu-*

---

1. The letters assigned specific territories in Beaver County; Aliquippa also had limited distributing rights in Allegheny County.

2. Appellants alleged violations of 47 P.S. 4–431(d)(1), and 4–492(19), which respectively provide in relevant part:
   All distributing rights as hereinabove required shall be in writing [and] shall not be modified, cancelled, terminated or rescinded by the manufacturer without good cause.
   It shall be unlawful.-
   (19) For any manufacturer or any officer, agent or representative of any manufacturer to modify, cancel, terminate, rescind or not renew, without good cause, any distributing rights agreement, and in no event shall any modification, cancellation, termination, rescission or nonrenewal of any distributing rights agreement become effective for at least ninety (90) days after written notice of such modification, cancellation, termination, rescission or intention not to renew has been served on the affected party and board by certified mail, return receipt requested, except by written consent of the parties to the agreement. The notice shall state all reasons for the intended modification, cancellation, termination, rescission or nonrenewal. The distributor or importing distributor holding such agreement shall have ninety (90) days in which to rectify any claimed deficiency, or challenge the alleged cause.

*tor as a primary or original supplier of their products* subsequent to the effective date of this act, [August 21, 1980,] or unless such Pennsylvania manufacturers have named or constituted a distributor or importing distributor as a primary or original supplier of their products

47 P.S. § 4–431(d)(5)(emphasis supplied).

The learned trial court concluded appellants were not primary or original suppliers, and accordingly held it was without jurisdiction to issue an injunction under the Liquor Code. Appellants concede, as they must, that the letter agreement does not name them primary or original suppliers, but vigorously contend evidence of their relationship with PBC shows they had been "constituted" as such.

In support thereof, appellants rely upon *Matt Lamb, supra,* and *Tony Savatt, Inc. v. Latrobe Brewing Co.,* 400 Pa.Super. 296, 583 A.2d 796 (1990), *alloc. denied,* 527 Pa. 668, 593 A.2d 843, *cert. denied,* 502 U.S. 982, 112 S.Ct. 586, 116 L.Ed.2d 611 (1991), where evidence of the parties' business relationship was sufficient to support a finding they had been "constituted" primary suppliers, despite explicit language to the contrary.

In *Matt Lamb, supra,* Schmidt Brewing sent Lamb a letter nine days before the effective date of the above-cited 1980 amendments to the Liquor Code, purporting to change Lamb to a "secondary" distributor. However, Schmidt acknowledged the parties' relationship after the letter was essentially unchanged. "Lamb's president executed the letter agreement on August 27, 1980, in the belief that the revised agreement would work no substantive alteration of the Lamb–Schmidt relationship." *Id.,* at 349, 485 A.2d at 840 (citing from chancellor's opinion)(footnote omitted). Hence, our court determined *"the letter agreement [changing Lamb from primary to secondary supplier] really had no effect on the status of Lamb as a primary distributor."* *Id.,* at 350, 485 A.2d at 840 (emphasis supplied).

The circumstances were similar in *Tony Savatt, supra,* where "[n]otwithstanding the agreement's language, [which specifically named Tony Savatt secondary supplier,] Latrobe assured Savatt both orally and in writ-

ing that *the [new] agreement would effect no change in their actual relationship and that their business relationship would proceed as before with Savatt as primary distributor in fact."* *Id.,* at 302, 583 A.2d at 798 (emphasis supplied). Since the distributing agreements in both cases were modified solely to attempt to avert the 1980 amendments, the parties' conduct was particularly indicative of the truth, i.e., the distributors had been previously "constituted" primary suppliers, and the change in title did nothing to make a change in fact.

In the instant case, appellants entered into a letter agreement with PBC in November, 1994, more than fourteen years after the notice and "good cause" requirements were added to the Liquor Code. The record is void of any evidence suggesting the letters were designed to sidestep those requirements, or to disguise a preexisting relationship, as was the case in *Matt Lamb,* and *Tony Savatt.* Here, the record inexorably demonstrates the letters merely reflect PBC's longstanding policy of not conferring primary supplier status upon any distributor. N.T., 10/10/96, at 160–61, 201, and 203; N.T., 11/11/96, at 213.

Although appellants had the privilege of buying direct from the brewery and were obligated for, *inter alia,* advertising, merchandising, sales, and inventory control, they failed to establish such factors are atypical of a secondary supplier. While evidence of their conduct certainly is relevant in interpreting the agreement, it does not automatically work to appellants' benefit.

■■■ Moreover, it is not necessarily the number or extent of obligations arising under a distributorship agreement that controls its nature; the question is whether the manufacturer expressly granted an unfettered and exclusive right to sell its products in a specified region. Though PBC permitted appellants to enjoy many of the luxuries of a monopoly, it specifically retained primary supplier status in itself, which was its right. *See Rudolph Rosa, Inc. v. Latrobe Brewing Co.,* 347 Pa.Super. 551, 560, 500 A.2d 1194, 1199 (1985), *citing Legislative Journal,* 164 General Assembly, Senate, Vol. 2, No. 36, at 1743 (June 3, 1980)("a Pennsylvania manufac-

turer [may] act as the primary or original supplier of [its] products for any designated area, including the entire Commonwealth of Pennsylvania, if [it] so desires").

"Where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement." *Keyser v. Margolis*, 422 Pa. 553, 559, 223 A.2d 13, 17 (1966) (citation omitted). As the record contains no evidence of fraud, undue influence, or the like, the trial court reasonably relied upon the language of the letter agreements, which specifically identifies appellants as secondary suppliers.

Accordingly, the learned trial court properly found it was without jurisdiction to impose an injunction under section 4–431(d)(4) of the Liquor Code.

Order affirmed.