569 A.2d 951

McKEESPORT BEER DISTRIBUTORS, INC., Appellant,

v.

ALL BRAND IMPORTERS, INC.

Superior Court of Pennsylvania.

Argued Aug. 22, 1989.

Filed Jan. 10, 1990.

Reargument Denied Feb. 26, 1990.

William Stang, Pittsburgh, for appellant.

Roslyn M. Litman, Pittsburgh, for appellee.

Before CAVANAUGH, BROSKY and ROWLEY, JJ.

ROWLEY, Judge:

McKeesport Beer Distributors, Inc. (McKeesport), filed an action in equity to enjoin All Brand Importers, Inc. (ABI), from terminating McKeesport's distributing rights agreement with ABI and to recover damages for expenses and

costs incurred as a result of ABI's allegedly wrongful conduct. The trial court denied McKeesport's request for a preliminary injunction and, following a hearing, entered a decree nisi in favor of ABI. McKeesport filed exceptions, which the trial court considered and denied. A final decree was entered and McKeesport filed this appeal. After careful review of the record and the arguments of counsel, we reverse the final decree of the trial court and remand for further proceedings.

McKeesport is a licensed importing distributor of beer, malt, and brewed beverages, pursuant to the Pennsylvania Liquor Code, 47 P.S. § 4–431. As an importing distributor, McKeesport distributes approximately 1.3 million cases of beer and 70,000 half barrels of beer per year [1] to over 300 retailers. ABI, an exclusive distributor of certain brands of beer and malt beverages, is licensed to distribute its products in Pennsylvania pursuant to § 4–444 of the Liquor Code, 47 P.S. § 4–444. ABI and McKeesport entered into a distributing rights agreement on November 10, 1982, giving McKeesport the exclusive right to distribute ABI's products in Westmoreland, Washington, Fayette, and Greene counties in their entirety, and in a portion of Allegheny County. The only written evidence of the agreement is a letter from ABI to the Pennsylvania Liquor Control Board (PLCB) dated November 10, 1982, filed pursuant to § 4–431 of the Liquor Code. The letter sets forth the boundaries of the territory assigned to McKeesport.

On October 7, 1985, ABI notified McKeesport by letter that it intended to terminate their agreement because McKeesport had made out-of-territory sales of ABI products. On October 12, 1985, McKeesport again sold an ABI product outside of its designated geographic territory. In a certified letter dated November 6, 1985, ABI notified

---

1. Although the trial court's finding of fact no. 7 gives a figure of 7,000 half barrels rather than 70,000, the trial court's citation to the transcript suggests that the trial court was accepting the figure of 70,000 half barrels offered by Alfred Cecchini, former president of McKeesport, and that the figure of 7,000 half barrels was a typographical error.

McKeesport of its intention to terminate the agreement, giving 90 days written notice as required by § 4–492(19) of the Liquor Code, 47 P.S. § 4–492(19). On December 14, 1985, McKeesport made another out-of-territory sale. There is no evidence that any subsequent out-of-territory sales occurred. During the period from March 1985 through December 14, 1985, there was a total of sixteen separate incidents of out-of-territory sales of ABI products by McKeesport.[2]

In the instant case, the trial court found that the distributing rights agreement between ABI and McKeesport was memorialized by a letter sent from ABI to the PLCB and filed pursuant to the Liquor Code, that ABI provided no written contract and did not discuss the terms of the agreement with McKeesport, and that the only terms or conditions of the agreement between ABI and McKeesport were those set forth in the letter to the PLCB. The trial court held that ABI's termination of the agreement was valid, as the out-of-territory sales constituted "good cause" for termination and they could not be "cured."

Our scope of review of an adjudication in equity is well settled. The chancellor's findings of fact are to be accorded the weight of a jury verdict and will not be reversed on appeal if the evidence is adequate to support them and if they are not founded upon erroneous inferences and deductions or errors of law. *Roberts v. Estate of Barbagallo*, 366 Pa.Super. 559, 567, 531 A.2d 1125, 1129–30 (1987). Conclusions of law, however, may be reviewed at the liberty of the appellate court. *Presbytery of Beaver–Butler v. Middlesex*, 507 Pa. 255, 266, 489 A.2d 1317, 1323 (1985), *cert. denied*, 474 U.S. 887, 106 S.Ct. 198, 88 L.Ed.2d 167 (1985). Facts supported by the record are binding. *Id.*

McKeesport challenges the trial court's adjudication by asserting that good cause for the termination was lacking,

**2.** Except for an out-of-territory sale in March 1985, evidence of these out-of-territory sales by McKeesport was uncovered by an agent of the PLCB who examined McKeesport's invoices for the period from August 1985 through March 1986. N.T. at 186–87.

inasmuch as the out-of-territory sales were "inadvertent" and constituted only .005% of its total volume of sales. In addition, McKeesport argues that because another ABI distributor was also making out-of-territory sales, but ABI did not terminate the other distributor's agreement, ABI is barred from terminating McKeesport's agreement in light of § 4–431(d)(1) of the Liquor Code, which requires that all distributing agreements of a particular distributor be substantially similar as to terms and conditions. Finally, appellant asserts that, as permitted under 47 P.S. § 4–492(19), it cured its improper behavior by stopping all out-of-territory sales within 90 days of the November 6, 1985 letter from ABI.

To evaluate the first of appellant's claims, we note that §§ 4–431(d)(1) and 4–492(19) of the Liquor Code provide that distributing rights agreements shall not be terminated without good cause. "Good cause" is defined as follows:

> "Good cause" shall mean the failure by any party to an agreement, without reasonable excuse or justification, to comply substantially with an essential, reasonable and commercially acceptable requirement imposed by the other party under the terms of an agreement.

47 P.S. § 4–431(d)(1). The trial court found that the only written evidence of the parties' agreement was ABI's letter of November 10, 1982 to the PLCB. That letter sets forth the geographical boundaries of McKeesport's distributorship. The trial court also found, and it was undisputed, that on 16 occasions McKeesport sold ABI products outside the geographical limits of its distributorship. While we agree with McKeesport that the volume of the out-of-territory sales was minimal in comparison to the total volume of its sales, we find no error in the trial court's conclusion that these sales, which continued over a period of 10 months, constituted good cause to terminate the agreement. The sales were a substantial violation of the commercially acceptable requirement and statutorily required condition in

the parties' agreement that McKeesport's distributorship would be limited to a certain geographical area.[3]

McKeesport also argues that ABI should be equitably estopped from terminating McKeesport's agreement since ABI did not treat McKeesport the same as at least one other ABI distributor who not only engaged in out-of-territory sales, but who did so with the knowledge and consent of ABI in violation of § 4–431(d)(1) of the Code.[4] Section 4–431(d)(1) provides in pertinent part as follows:

All distributing rights as hereinabove required shall be in writing, shall be equitable in their provisions and shall be substantially similar as to terms and conditions with all other distributing rights agreements between the manufacturer giving such agreement and its other importing distributors....

We agree with the trial court that because McKeesport failed to prove that ABI, by act or representation, had induced McKeesport to believe that its agreement would not be terminated if it engaged in out-of-territory sales, McKeesport's claim of equitable estoppel was meritless.

3. Our finding in this regard makes it unnecessary for us to consider the trial court's rationale that there was good cause to terminate the agreement because the out-of-territory sales constituted a violation of § 4–431(b) of the Liquor Code. We note, however, that in the appropriate action brought by the Liquor Control Board against McKeesport for violation of § 4–431(b), McKeesport argued, as it does in the present case, that it had engaged in only an inadvertent or *de minimus* infraction. *Commonwealth, Pennsylvania Liquor Control Board v. McKeesport Beer Distributor, Inc.*, 120 Pa.Cmwlth. 554, 549 A.2d 256 (1988). The Commonwealth Court reversed the trial court's ruling that such an "unintentional minor misdelivery," *id.* at 557, 549 A.2d at 257, should not be punished under the Liquor Code. *Id.* at 558, 549 A.2d at 258.

4. The exact nature of McKeesport's disparate treatment claim, as presented in its brief on appeal, is unclear. Although the brief does not mention the disparate treatment claim in terms of an equitable estoppel argument, an equitable estoppel claim based on the disparate treatment theory was presented to and addressed by the trial court. Insofar as McKeesport is arguing on appeal that the alleged disparate treatment precludes a finding of good cause to terminate its agreement, we note simply that McKeesport offers no authority for the proposition that where a manufacturer should have terminated an importing distributor's agreement for a specified cause, but did not, § 4–431(d)(1) bars the manufacturer from terminating the agreement of a second importing distributor on the basis of that same cause.

*Curran v. Eberharter*, 361 Pa.Super. 65, 521 A.2d 474 (1987), *alloc. denied*, 515 Pa. 613, 530 A.2d 867 (1987).

Finally, McKeesport contends that the trial court erred in not finding that ABI's termination of the distribution agreement violated the Liquor Code's requirement that an importing distributor be given ninety days in which to rectify an alleged deficiency. That requirement is set forth in § 4–492, as follows:

> (19) [It shall be unlawful] [f]or any manufacturer or any officer, agent or representative of any manufacturer to modify, cancel, terminate, rescind or not renew, without good cause, any distributing rights agreement, and in no event shall any modification, cancellation, termination, rescission or nonrenewal of any distributing rights agreement become effective for at least ninety (90) days after written notice of such modification, cancellation, termination, rescission or intention not to renew has been served on the affected party and board by certified mail, return receipt requested, except by written consent of the parties to the agreement. The notice shall state all the reasons for the intended modification, termination, cancellation, rescission or nonrenewal. *The distributor or importing distributor holding such agreement shall have ninety (90) days in which to rectify any claimed deficiency, or challenge the alleged cause.*

47 P.S. § 4–492(19) (emphasis added). The trial court held that the 90–day–notice provision was not applicable to McKeesport because there was no way to "cure" the out-of-territory sales. Moreover, the court noted, McKeesport continued to engage in out-of-territory sales after the 90–day notice was given.

ABI expands upon the trial court's conclusions by arguing on appeal that the effect of the disjunctive language in § 4–492(19) ("ninety (90) days in which to rectify any claimed deficiency, or challenge the alleged cause") is to divide reasons for termination into two categories: 1) deficiencies, which can be rectified; and 2) other causes, which cannot be rectified, but can only be challenged. An exam-

ple of a deficiency, ABI argues, is offered in § 4–492(19) itself in a subsequent reference to the failure of a distributor to have an adequate warehouse or adequate equipment. Such a condition, according to ABI, can be rectified because it can be put right in the future, whereas a violation of the Liquor Code such as out-of-territory sales cannot be rectified because it cannot be undone. ABI argues that McKeesport's only choice in the latter situation was to challenge the assertion that any such violations had occurred, and since McKeesport admitted that it made the out-of-territory sales, it was without further recourse under § 4–492(19).

■ After carefully considering the trial court's ruling and ABI's arguments in support thereof, we are constrained to disagree with both the arguments and the ruling. In interpreting the 90–day notice provision of § 4–492(19), we are directed to ascertain and give effect to the intention of the General Assembly, and in doing so to presume that the General Assembly intended the entire statute to be effective and certain, and did not intend an absurd or unreasonable result. 1 Pa.C.S. §§ 1921(a), 1922(1), (2). In light of these precepts, we cannot accept the argument that the General Assembly, having otherwise addressed the rights and duties of importing distributors in considerable detail, intended to distinguish between curable and non-curable reasons for termination, but did so by implication only. It will produce a more certain and reasonable result, we think, to read the disjunctive provision of § 4–492(19) as giving the distributor 90 days in which to do one of two things: 1) if the reason for the intended termination is admitted, to rectify the deficiency; or 2) if the reason for the intended termination is disputed, to challenge the assertion of good cause.

Our interpretation is supported by the following paragraph, from which ABI draws its "examples" of a deficiency:

If the notice states as one of the reasons for the intended modification, cancellation, termination, rescission or re-

newal [sic] that the importing distributor or distributor's equipment or warehouse requires major changes or additions, then if the distributor or importing distributor shall have taken some positive action to comply with the required changes or additions, the distributor or importing distributor shall have deemed [sic] to have complied with the deficiency as set forth in the notice. The notice provisions of this section shall not apply if the reason for termination, cancellation or nonrenewal is insolvency, assignment for the benefit of creditors, bankruptcy, liquidation, fraudulent conduct in its dealings with the manufacturer, revocation or suspension for more than a thirty (30) day period of the importing distributor or distributor license.

47 P.S. § 4–492(19). We do not read the first sentence of this paragraph as offering examples of a remediable deficiency, but rather as addressing situations in which it would be unreasonable to expect a deficiency to be remedied within 90 days. The second sentence of the paragraph specifies those situations in which the distributor will not be afforded the benefit of 90 days notice prior to termination. Read in its entirety, this paragraph sets forth two exceptions to the general application of the 90–day–notice provision. To infer that there is a third, implied exception—situations in which the distributor is allowed 90 days notice but can only challenge, not rectify, the reasons for termination—would violate the principle that where some things are specifically designated in a statute, things not so designated should be understood as having been omitted. *Omodio v. Aetna Life and Casualty,* 384 Pa.Super. 544, 545, 559 A.2d 570, 571 (1989).

■ Furthermore, we do not view McKeesport's "deficiency" as being any less "curable" than others. In *Matt Lamb & Sons, Inc. v. Christian Schmidt Brewing Company,* 336 Pa.Super. 341, 485 A.2d 836 (1984), appellant Schmidt appealed the continuation of an injunction granted to appellee Lamb to prevent Schmidt's attempted termination of Lamb's distribution agreement. As "good cause"

Schmidt had cited five alleged deficiencies: 1) failure to use best efforts in sales; 2) failure to make maximum use of product identification; 3) failure to cultivate all trade outlets in the assigned area; 4) failure to participate in Schmidt sales promotion activities; and 5) failure to maintain adequate sales records. This Court agreed with the chancellor's finding that good cause was wanting because the five alleged deficiencies were, for various reasons, refuted by the record. With regard to the second of the alleged deficiencies just cited, this Court noted that "Lamb notified Schmidt two weeks after the letter listing the deficiencies [and giving 90 days notice] that all uniformed personnel now bore Schmidt identification." *Id.,* 336 Pa.Superior Ct. at 352 n. 4, 485 A.2d at 842 n. 4. Lamb's failure in the past to have its drivers wear Schmidt identification on their uniforms could not be undone, but Lamb was able to rectify the deficiency by having its drivers begin to wear uniforms bearing Schmidt identification. It is similarly impossible for McKeesport to undo its past failure to confine its sales to its assigned territory, but it is possible for McKeesport to rectify the deficiency by ensuring that out-of-territory sales do not continue to occur.

Having determined that the deficiency was one which could be rectified, we turn to the question of whether the deficiency was in fact rectified. ABI asserts that it was not, inasmuch as McKeesport made at least two out-of-territory sales after being notified of the intended termination of the agreement. The trial court made the following findings of fact on this point:

9. ABI sent McKeesport a letter dated October 7, 1985, notifying McKeesport of its intent to terminate the distributing rights agreement because of McKeesport's out-of-territory sales of ABI products.

10. Subsequently, ABI notified McKeesport by certified letter dated November 6, 1985, which letter was received by McKeesport, that it (ABI) was terminating the distributing rights agreement between the parties because

McKeesport was selling ABI products outside the territory designated by ABI in the distributing rights agreement. Said termination was to be effective ninety (90) days after the date of this notice.

11. McKeesport made at least one (1) out-of-territory sale, in October, 1985, subsequent to the date of the October 7, 1985 letter from ABI. Further, McKeesport made at least one (1) out-of-territory sale in December of 1985, which was subsequent to the November 7th letter sent by ABI.

Finding of fact no. 8 lists these final sales as having occurred on October 12 and December 14, 1985. As these findings indicate, we have evidence of only one out-of-territory sale by McKeesport after its receipt of the 90–day notice contained in the second letter. As for the reasons why McKeesport was not immediately able to end its out-of-territory sales, a subsequent finding of fact is instructive:

13. Beer and Lottery Store and Mall Beverage [the stores to which the last two out-of-territory sales were made] are in McKeesport's territory for most brands of beer, but not for ABI products. McKeesport sold approximately 300 to 600 cases of beer per week to the Beer and Lottery Store and approximately 300 to 600 cases of beer per week to Mall Beverage. During a twelve (12) to fourteen (14) month period from the end of 1984 to the end of 1985, McKeesport sold a total of 69 cases of ABI products to these two (2) outlets.

It is not unreasonable to assume, as McKeesport suggests in this appeal, that where distributorships overlap, customers such as Beer and Lottery Store and Mall Beverage might become confused as to which brands of beer could be bought from McKeesport and that McKeesport personnel might become confused as to which brands of beer could be sold to those stores. To remedy the problem, McKeesport would have to implement procedures to ensure that its employees would know precisely which brands could be sold

in a given location. McKeesport's last out-of-territory sale occurred on December 14, 1985, 38 days after ABI gave notice of intended termination in 90 days. The PLCB agent who checked McKeesport's records through March of 1986 uncovered no further out-of-territory sales. In light of the particular facts and circumstances of this case, we conclude that McKeesport effectively rectified within 90 days the deficiency cited by ABI and, therefore, that the trial court erred in concluding that ABI's termination of the distributing rights agreement with McKeesport was valid.

ABI contends that if we determine that ABI's termination of its distributing rights agreement with McKeesport was not valid under §§ 4–431(d) and 4–492(19) of the Liquor Code, as we have done, we must then consider ABI's constitutional challenge to those statutory provisions. ABI argues that §§ 4–431(d) and 4–492(19) allow for discriminatory treatment between non-Pennsylvania manufacturers and distributors and Pennsylvania manufacturers and distributors, as the latter are not required to show good cause when terminating distribution agreements. Therefore, according to ABI, those provisions violate the Commerce Clause of the federal Constitution, the Equal Protection Clause of the Fourteenth Amendment to the federal Constitution, and Section 32 of Article III of the Pennsylvania Constitution, which prohibits "special laws" regulating trade or manufacturing. After reviewing the record, however, we find no indication that notice has ever been given to the Attorney General of Pennsylvania, as is required by Pa.R.C.P. 235 and Pa.R.A.P. 521 of any party challenging the constitutionality of a statute in a matter in which the Commonwealth is not a party. Accordingly, we find that ABI has waived this issue. *Faust v. Messinger*, 345 Pa.Super. 155, 159, 497 A.2d 1351, 1352 (1985), *appeal dismissed*, 514 Pa. 286, 523 A.2d 741 (1987).

Final decree reversed and case remanded to the trial court for further proceedings consistent with this opinion. Jurisdiction relinquished.