Lucy J. PALLADINETTI, t/a Bell's Beverage, Appellee,

v.

PENN DISTRIBUTORS, INC., Appellant. (Two Cases)

Superior Court of Pennsylvania.

Argued March 11, 1997.

Filed June 17, 1997.

Jerome J. Shestack, Philadelphia, for appellant.

Arnold E. Cohen, Philadelphia, for appellee.

Before McEWEN, President Judge, and EAKIN, J., and CERCONE, President Judge Emeritus.

1. A decree nisi was entered on March 19, 1996, and post-trial motions were filed on March 29, 1996. A praecipe to enter an adverse judgment *pursuant to* Pa.R.Civ.P. 227.4(1)(b), was filed by appellant on July 29, 1996. Post-trial motions were denied by order dated August 1, 1996, and the damage award was·modified by order dated August 21, 1996.

2. Judgment was entered on the verdict as follows:

loss of price spreads from
April '91—April '92 .......... $ 417,142.81

McEWEN, President Judge:

These consolidated appeals, taken from the final decree[1] which granted a permanent injunction and awarded damages[2] in the amount of $1,133,042.84 to Lucy J. Palladinetti, t/a Bell's Beverage (hereinafter "appellee"), present, in essence, a single but nonetheless perplexing query: When is a beer distributor, licensed as an "importing distributor" under the Liquor Code, 47 P.S. §§ 1–101 *et seq.*, not an "importing distributor" but a "manufacturer" for purposes of the provisions of the Liquor Code. The trial court found that, despite the fact that all parties concede that Penn Distributors, Inc. (hereinafter "appellant") is a licensed importing distributor of brewed and malt beverages, holding LCB license # ID175, and is the exclusive importing distributor of certain brands of malt and brewed beverages, including Anheiser–Busch and Stroh's, in a territory consisting of Philadelphia and sections of the·contiguous counties, appellant was, in fact, a "manufacturer" for certain limited purposes. As a result of its finding that appellant was a "manufacturer", the trial court held that appellant was subject to the "good cause" provisions of Section 4–431(d)(1) of the Liquor Code in its dealings with appellee, who is also a licensed importing distributor of brewed and malt beverages, holding LCB license # ID603, and who is appellant's subdistributor or secondary distributor to trade customers inside appellant's territory. The trial court then found that since appellant was a "manufacturer" which could not, without "good cause", modify an oral distribution agreement whereby appellee had acted as a secondary or sub-distributor of appellant's products to the tavern trade within appellant's exclusive territory,[3] appellee was entitled to injunctive relief to pre-

| | |
|---|---|
| interest·on claim................ | $ 124,508.51 |
| "taken accounts" ............... | $ 491,368.14 |
| interest on accounts............. | $ 81,210.72 |
| cost of bond ................·..... | $ 18,812.66 |
| Total......................... | $1,133,042.84 |

3. Pursuant to Subsection 4–431(b) of the Code, a manufacturer is required to designate in writing a primary importing distributor for each area of the state, the geographic areas must be contiguous and the distribution rights inside the territory of each of the primary importing distributors must be exclusive.

clude any modification of the subdistribution agreement as well as money damages. We find that the trial court committed an error of law in concluding that the definition of "manufacturer" contained in 47 P.S. § 4–431(b.1)(3) could be applied to the provisions of 47 P.S. § 4–431(d) despite the express restrictions contained in paragraph (3) of subsection 4–431(b.1), which limits the application of the special definition of "manufacturer" to subsection (b.1). We are, therefore, constrained to vacate the Permanent Injunction and the money judgment entered by the trial court.

Our scope of review on an appeal from a final decree upholding the grant of a permanent injunction is limited. We are bound to accept the chancellor's findings of fact and accord them the weight of a jury verdict where supported by competent evidence. We are not, however, bound by conclusions drawn from those facts or by legal conclusions and may reverse for abuse of discretion or error of law. *Den–Tal–Ez, Inc. v. Siemens Capital Corporation,* 389 Pa.Super. 219, 566 A.2d 1214 (1989).

*Tony Savatt Inc. v. Latrobe Brewing Co.,* 400 Pa.Super. 296, 303–05, 583 A.2d 796, 799 (1990), *allo. denied,* 527 Pa. 668, 593 A.2d 843 (1991), *cert. denied,* 502 U.S. 982, 112 S.Ct. 586, 116 L.Ed.2d 611 (1991).

Appellant is a licensed importing distributor of malt and brewed beverages which entered into an agreement in August of 1984,[4] with appellee whereby appellee would act as its designated subdistributor to the tavern trade inside appellant's territory, with certain exceptions[5] subject to certain resale restrictions imposed by appellant. Pursuant to that agreement, appellee distributed appellant's products to certain taverns, hotels, and restaurants inside appellant's territory until late in 1990 when appellee indicated that it

was contemplating severing its relationship with appellant. Appellant provided a new schedule of discounts to appellee which were to take effect in January of 1991 and the distribution arrangement continued. Appellant, however, early in 1991, informed appellee that it intended to start servicing the tavern trade customers in its territory in Center City and in South Philadelphia. Appellee objected and the parties entered into negotiations but failed to reach an agreement. Appellant, in April of 1991, terminated its subdistribution agreement with appellee, discontinued the previous discounts it had extended to appellee, and began directly soliciting the trade accounts. Appellee sought and was granted a preliminary injunction, pursuant to 47 P.S. § 4–431(d)(4), which was affirmed by the Superior Court on March 4, 1993, in a memorandum decision. *Palladinetti v. Penn Distributors, Inc.,* 429 Pa.Super. 659, 628 A.2d 461 (1993). The trial court subsequently entered a permanent injunction and an award of money damages and this timely appeal followed.

The Liquor Code, 47 P.S. §§ 1–101 *et seq.,* was enacted for the purpose of, *inter alia,* prohibiting

the manufacture and transactions in liquor, alcohol and malt or brewed beverages which take place in this Commonwealth except by and under the control of the board as herein specifically provided, and every section and provision of the act shall be construed accordingly; **to provide a structure in this Commonwealth for a distribution system, including the** establishment of Pennsylvania liquor stores and licensing of importing distributors and distributors, and to preserve manufacturers of liquor and alcohol and malt and brewed beverages selling those products within this Commonwealth.

---

4. Subsection 4–431(b) of the Code provides that "the importing distributor holding such distributing rights for such product [malt or brewed beverages manufactured outside the Commonwealth] shall not sell or deliver the same to another importing distributor without first having entered into a written agreement with the said secondary importing distributor setting forth the terms and conditions under which such products are to be resold within the territory granted

to the primary importing distributor by the manufacturer." 47 P.S. § 4–431(b).

5. Excluded from those retailers to whom appellee was authorized to distribute appellant's products were certain national and "pet" accounts as well as accounts with which appellant had a special relationship.

47 P.S. § 1–104(c) (emphasis supplied). As a result of the enactment of the Liquor Code, "(t)he conduct of the liquor business in the Commonwealth is lawful only to the extent and manner permitted by statute. *Replogle v. Commonwealth, PLCB*, 514 Pa. 209, 523 A.2d 327 (1987)." *Tony Savatt, Inc. v. Latrobe Brewing Co., supra* at 304, 583 A.2d at 799.

Section 1–102 of the Liquor Code sets forth definitions for those terms used throughout the Code, and provides, *inter alia:*

> "The following words or phrases, *unless the context clearly indicates otherwise,* shall have the meanings ascribed to them in this section [emphasis supplied]:
>
> * * * * * *
>
> "Importing distributor" shall mean any person licensed by the board to engage in the purchase from manufacturers and other persons located outside this Commonwealth and from persons licensed as manufacturers of malt or brewed beverages and importing distributors under this act, and the resale of malt or brewed beverages in the original sealed containers as prepared for the market by the manufacturer at the place of manufacture, but not for consumption on the premises where sold, and in quantities of not less than a case or original containers containing one hundred twenty-eight ounces or more which may be sold separately.
>
> * * * * * *
>
> "Distributor" shall mean any person licensed by the board to engage in the purchase only from Pennsylvania manufacturers and from importing distributors and the resale of malt or brewed beverages, except to importing distributors and distributors, in the original sealed containers as prepared for the market by the manu-

facturer at the place of manufacture, but not for consumption on the premises where sold, and in quantities of not less than a case or original containers containing one hundred twenty-eight ounces or more which may be sold separately.

> "Manufacturer" shall mean any person, association or corporation engaged in the producing, manufacturing, distilling, rectifying or compounding of liquor, alcohol or malt or brewed beverages in this Commonwealth or elsewhere.
>
> "Manufacturer of malt or brewed beverages" shall mean any person holding a license issued by the board to engage in the manufacture, transportation and sale of malt or brewed beverages; also, any person engaged in the legal manufacture of malt or brewed beverages within the territorial limits of the United States, outside the Commonwealth of Pennsylvania.

47 P.S. § 1–102.

The trial court found, and the parties agree, that both appellee and appellant are licensed as "importing distributors" under the Liquor Code, and there is no contention that appellant has ever "engaged in the producing, manufacturing, distilling, rectifying, or compounding of liquor, alcohol or malt or brewed beverages." In fact, the Liquor Code specifically prohibits any entity or person holding an importing distributor's license from engaging in manufacturing or holding a manufacturing license, 47 P.S. § 4–438(c).[6] The trial court, however, entered a preliminary injunction as well as the subsequent permanent injunction pursuant to the authority granted to trial courts by subsection 4–431(d)(4) of the Code, a statutory provision which affords such authority to the trial court, but only where *one* of the parties to the distribution agreement is a *manufacturer:*

> (b) No person shall possess or be issued more than one distributor's or importing distributor's license.
>
> (c) No person shall possess more than one class of license, except that a holder of a retail dispenser's license may also be a holder of a retail liquor license.

47 P.S. § 4–438 (emphasis supplied).

---

6. Section 4–438 of the Code provides:

§ 4–438. **Number and kinds of licenses allowed same licensee**

(a) Any retail dispenser may be granted licenses to maintain, operate or conduct any number of places for the sale of malt or brewed beverages, but a separate license must be secured for each place where malt or brewed beverages are sold.

(4) The court of common pleas of the county wherein the licensed premises of the importing distributor or distributor are located is hereby vested with jurisdiction and power to enjoin the modification, rescission, cancellation or termination of a franchise or agreement *between a manufacturer and an importing distributor or distributor* at the instance of such importing distributor or distributor who is or might be adversely affected by such modification, rescission, cancellation or termination, and in granting an injunction the court shall provide that no manufacturer shall supply the customers or customers through other importing distributors or distributors or any other means while the injunction is in effect: Provided, however, that any injunction issued under this subsection shall require the posting of sufficient bond against damages arising from an injunction improvidently granted and a showing that the danger of irrevocable loss or damage is immediate and that during the pendency of such injunction the importing distributor or distributor shall continue to service the accounts of the manufacturer in good faith.

47 P.S. 4–431(d)(4)(emphasis supplied).

■ The trial court, aware that subsection 4–431(d)(4) permits the entry of an injunction only to enjoin modification or termination of an agreement "between *a manufacturer* and an importing distributor or distributor", nevertheless found that appellant was a "manufacturer" by applying the special definition of "manufacturer" contained in subsection 4–431(b.1)(3) of the Code. This was error.

Subsection 4–431(b.1) was first added to the Liquor Code by the Act of June 29, 1987, P.L. 32, No. 14. This subsection, in its entirety, provides:

(b.1)(1) Any person in this Commonwealth or elsewhere who shall purchase or in any manner whatsoever acquire or otherwise succeed to the business of a manufacturer, assets or rights to import, market, ship into this Commonwealth or distribute a brand of beer, or to use and exploit any trademark incorporated as part of a brand of beer produced by such a manufacturer shall be obligated to all terms of the manufacturer's franchise agreements in effect on the effective date of the purchase, acquisition or succession, or, if earlier, at the time the agreement contemplating the purchase, acquisition or succession is actually made.

(2) "**Purchase**" or "**acquisition,**" for purposes of this section includes, but is not limited to, a purchase, acquisition, lease, license or assignment of all or a controlling interest in the capital stock or operating assets, including brand trademarks rights; merger; any corporate reorganization or consolidation; and also, without limitation, any license, cross-license, joint venture or other agreement or arrangement, directly or indirectly, transferring, substituting or materially changing the person or persons authorized by the one owning or controlling a brand or any trademark as part of a brand, to produce, import, ship, market or distribute the brand of beer into or within this Commonwealth.

(3) "**Manufacturer,**" as used in this subsection shall mean any person, including any agent of such person, who (i) is licensed as a manufacturer of malt or brewed beverages located within the Commonwealth of Pennsylvania, (ii) holds a distributor or importing distributor license, or (iii) manufactures any malt beverage, has title to any malt beverage products or has the contractual right to distribute any malt beverage product, whether licensed in this Commonwealth or not, who enters into an "agreement" with any importing distributor licensed to do business in this Commonwealth.

47 P.S. § 4–431(b.1).

The trial court concluded that the special definition of "manufacturer" provided by this subsection and which is specifically limited to use "in this subsection", could be applied to subsection 4–431(d)(1). Subsection 4–431(d)(1), which had been added to the Liquor Code by the Act of June 22, 1980, P.L. 253, § 1, provides:

(d)(1) All distributing rights as hereinabove required shall be in writing, shall be equitable in their provisions and shall be substantially similar as to terms and conditions with all other distributing rights

agreements between the manufacturer giving such agreement and its other importing distributors and distributors shall not be modified, cancelled, terminated or rescinded by the manufacturer without good cause, and shall contain a provision in substance or effect as follows: "The manufacturer recognizes that the importing distributor and distributor are free to manage their business in the manner the importing distributor and distributor deem best and that this prerogative vests in the importing distributor and distributor the exclusive right to establish a selling price, to select the brands of malt or brewed beverages they wish to handle and to determine the efforts and resources which the importing distributor and distributor will exert to develop and promote the same of the manufacturer's products handled by the importing distributor and distributor. However, the manufacturer expects that the importing distributor and distributor will price competitively the products handled by them, devote reasonable effort and resources to the sale of such products and maintain a reasonable sales level." "Good cause" shall mean the failure by any party to an agreement, without reasonable excuse or justification, to comply substantially with an essential, reasonable and commercially acceptable requirement imposed by the other party under the terms of an agreement.

47 P.S. § 4–431(d)(1).

We are unable to agree that the special expanded definition of "manufacturer" contained in subsection 4–431(b.1)(3) can be applied to subsection 4–431(d)(1) for two reasons: (1) because the expanded definition is expressly limited to application only in subsection (b.1), and (2) because the term "manufacturer" is used throughout subsection 4–431(d) and the Liquor Code in a manner which would specifically and directly conflict with the interpretation urged upon us by appellee.[7]

---

7. The remainder of subsection 431(d) provides:

(2) After January 1, 1980, no **manufacturer** shall enter into any agreement with more than one distributor or importing distributor for the purpose of establishing more than one agreement for designated brand or brands of malt or brewed beverages in any one territory. Each franchise territory which is granted by a **manufacturer** shall be geographically contiguous. All importing distributors shall maintain sufficient records to evidence compliance of this section. With regard to any territorial distribution authority granted to an importing distributor by a **manufacturer** of malt or brewed beverages after January 1, 1996, the records shall establish that each and every case of a brand of malt or brewed beverages for which the importing distributor is assigned was sold, resold, stored, delivered or transported by the importing distributor, either from a point or to a point within the assigned geographically contiguous territory, to any person or persons, whether such person or persons are licensed by this act or not licensed by this act.

(3) Except for discontinuance of a brand or a valid termination for good cause, the purchaser of the assets of the **manufacturer as defined in this act** shall become obliged to all the territorial and brand designations of the agreement in effect on the date of purchase. Purchase of assets as defined for the purposes of this act shall include, but not limited to, the sale of stock, sale of assets, merger, lease, transfer or consolidation.

(4) The court of common pleas of the county wherein the licensed premises of the importing distributor or distributor are located is hereby vested with jurisdiction and power to enjoin the modification, rescission, cancellation or termination of a franchise or agreement between a **manufacturer** and an importing distributor or distributor at the instance of such importing distributor or distributor who is or might be adversely affected by such modification, rescission, cancellation or termination, and in granting an injunction the court shall provide that no **manufacturer** shall supply the customers or territory of the importing distributor or distributor by servicing the territory or customers through other importing distributors or distributors or any other means while the injunction is in effect: Provided, however, that any injunction issued under this subsection shall require the posting of sufficient bond against damages arising from an injunction improvidently granted and a showing that the danger of irrevocable loss or damage is immediate and that during the pendency of such injunction the importing distributor or distributor shall continue to service the accounts of the **manufacturer** in good faith.

(5) The provisions of this subsection shall not apply to Pennsylvania **manufacturers** whose principal place of business is located in Pennsylvania unless they name or constitute a distributor or importing distributor as a primary or original supplier of their products subsequent to the effective date of this act, or unless such Pennsylvania **manufacturers** have named or constituted a distributor or importing distributor as a primary or original supplier of their products prior to the effective date of this

The function of this Court, of course, is to ascertain and effectuate the intention of the legislature. *Commonwealth v. Fisher,* 485 Pa. 8, 12, 400 A.2d 1284, 1287 (1979); *Sohmer v. Sohmer,* 318 Pa.Super. 500, 505, 465 A.2d 665, 667 (1983); 1 Pa.C.S. § 1921(a). In doing so, we must view the statute in its entirety. *Causer v. Mandarino,* 338 Pa.Super. 564, 568, 488 A.2d 36, 38 (1985). Each section must be read with reference to and in light of other sections of the same statute. *Commonwealth v. Mlinarich,* 345 Pa.Super. 269, 283–85, 498 A.2d 395, 402 (1985). When parts of the same statute relate to the same persons or things, they are to be construed together, if possible, as one statute. *City of York v. Reihart,* 475 Pa. 151, 156, 379 A.2d 1328, 1330 (1977); 1 Pa.C.S. § 1932. "Because the object of the rule is to ascertain and carry into effect the legislative intent, it proceeds upon the supposition that the several [parts] were governed by one spirit and policy, and were intended to be consistent and harmonious.... Under this rule, each ... section is construed in the light of, with reference to, or in connection with, other ... sections." 73 Am.Jur.2d, Statutes § 187 (1974)(footnotes omitted).

*Rudolph Rosa, Inc. v. Latrobe Brewing Co.,* 347 Pa.Super. 551, 558–60, 500 A.2d 1194, 1198 (1985).

In order to fulfill our obligation to ascertain and effectuate the intent of the legislature, we must first determine the meaning of the phrase "as used in this subsection".

Our Legislature has given clear instructions for the interpretation of ambiguous statutory language ... In the Introduction to the Pennsylvania Consolidated Statutes, which introduction was enacted into law November 25, 1970, there are found the following remarks:

To encourage uniformity of style, and to provide helpful suggestions relating to the step-by-step mechanics of drafting a codification bill, Legislative Reference Bureau has published a detailed *Style Manual* for the Pennsylvania Consoli-

dated Statutes. *See* 101 Pa.Code §§ 21.1 *et seq.*

1 Pa.C.S. Introduction. This *Style Manual,* contained in the Pennsylvania Code, has as one of its provisions, the following:

### § 23.26. Internal divisions of sections.

Whenever internal divisions are necessary, **subsections shall be identified by lower case letters,** paragraphs by Arabic numerals, subparagraphs by lower case Roman numerals, clauses by capital letters and subclauses by capital Roman numerals, all contained within parentheses, as follows:

| Terminology | Illustrative Symbol |
| --- | --- |
| **Subsection** | (a) |
| Paragraph | (1) |
| Subparagraph | (i) |
| Clause | (A) |
| Subclause | (I) |

101 Pa.Code § 23.26.

*Commonwealth v. McIvor,* 448 Pa.Super. 98, 114–18, 670 A.2d 697, 705–06 (1996)(en banc)(emphasis supplied), *allo. denied,* 547 Pa. 753, 692 A.2d 564 (1997). *Accord: Rump v. Aetna Casualty & Surety Co.,* 451 Pa.Super. 173, 177–79, 678 A.2d 1197, 1199 (1996), *allo. granted,* 547 Pa. 717, 688 A.2d 172 (1997).

Applying these statutory construction rules to the Liquor Code, it becomes apparent that Section 4–431 has been divided into six separate "subsections", each designated by a lower case letter, and subsection (b.1) has been further divided into three paragraphs, each designated by an Arabic numeral. So viewed, the special definition of "manufacturer" created by paragraph 3 of subsection (b.1) may be applied only to the provisions of the Liquor Code contained in paragraphs 1, 2 and 3 of subsection (b.1) and have *no* applicability to any of the five paragraphs contained in subsection (d). Thus, the trial court was without any statutory authority to enter an injunction against appellant, an importing distributor, to preclude it from terminating its subdistribution agreement with appellee, another importing distributor who was acting, under the Liquor Code, as a subdistributor.

act, and which status is continuing when this act becomes effective.

47 P.S. § 4–431(d) (emphasis supplied).

We find additional support for our conclusion when the Liquor Code is read as a whole since the construction of Section 4–431 urged upon us by appellee would render large sections of Section 4–431 illogical and conflicting surplusage, and would as well destroy major parts of the highly regulated distribution scheme created by the Code.

Section 4–431, entitled "Malt and brewed beverages manufacturers', distributors' and importing distributors' licenses," is divided into six subsections. Subsection 4–431(a) provides for the licensing of manufacturers, while subsection (b) provides for the licensing of importing distributors and distributors. Subsection (b.1) provides for the survival of all distribution franchise agreements in the event of a sale or transfer of the assets of a manufacturer.[8]

Subsection (c) of Section 4–431 sets forth the requirements which must be met by individuals, partnerships and associations desiring to obtain a manufacturing, importing distributor or distributor license.

Subsection (d) of Section 4–431 sets forth the requirements applicable to distribution agreements between manufacturers and importing distributors and distributors, and requires that those distribution rights between a manufacturer and importing distributor or distributor

> shall be in writing, shall be equitable in their provisions and shall be substantially similar as to terms and conditions with all other distributing rights agreements between the manufacturer giving such agreement and its other importing distributors and distributors shall not be modified, cancelled, terminated or rescinded by the manufacturer without good cause, and

shall contain a provision in substance or effect as follows: "The manufacturer recognizes that the importing distributor and distributor are free to manage their business in the manner the importing distributor and distributor deem best and that this prerogative vests in the importing distributor and distributor the exclusive right to establish a selling price, to select the brands of malt or brewed beverages they wish to handle and to determine the efforts and resources which the importing distributor and distributor will exert to develop and promote the same of the manufacturer's products handled by the importing distributor and distributor. However, the manufacturer expects that the importing distributor and distributor will price competitively the products handled by them, devote reasonable effort and resources to the sale of such products and maintain a reasonable sales level." "Good cause" shall mean the failure by any party to an agreement, without reasonable excuse or justification, to comply substantially with an essential, reasonable and commercially acceptable requirement imposed by the other party under the terms of an agreement.

47 P.S. § 4–431(d). Although appellee claims that the subdistribution agreement between it and appellant must be viewed as an agreement between a manufacturer and a distributor, if we were to interpret it as such, it would be an illegal agreement under the express terms of Section 4–431(d) which require that the agreement be in writing and provide for "substantially similar" terms and conditions with all other agreements made by appellant with its other importing distributors and distributors.[9] 47 P.S. § 4–431(d)(1).

---

**8.** Subsection (b.1)(1) provides:

> (b.1)(1) Any person in this Commonwealth or elsewhere who shall *purchase or in any manner whatsoever acquire or otherwise succeed to the business of a manufacturer, assets or rights to import, market, ship into this Commonwealth or distribute a brand of beer,* or to use and exploit any trademark incorporated as part of brand of beer produced by such a manufacturer shall be obligated to all terms of the manufacturer shall be *obligated to all terms of the manufacturer's franchise agreements* in effect on the effective date of the purchase, acquisition or succession, or, if earlier, at the time the agree-

> ment contemplating the purchase, acquisition or succession is actually made.
> 47 P.S. § 4–431(b.1) (emphasis supplied).

**9.** Of course, the agreement is, in fact, a subdistribution agreement between an importing distributor and another distributor which is expressly authorized by Section 4–431(b) of the Liquor Code:

> ... Provided, that the importing distributor holding such distributing rights for such product shall not sell or deliver the same to another importing distributor without first having entered into a written agreement with the said

Appellant would also be prohibited under appellee's construction of the Code from itself distributing or from distributing to any other licensee in the territory claimed by appellee, *any* brands of malt or brewed beverages which appellant has agreed to distribute to appellee, since each territory granted by a manufacturer to a distributor or importing distributor *must* be exclusive and geographically contiguous. 47 P.S. § 4–431(d)(2).[10]

 Appellee argues that, even if we were inclined to find under principles of statutory construction that appellant is an importing distributor under the Code and not a manufacturer, we are bound by the language in footnote one of *McKeesport Beer Distributors, Inc. v. All Brand Importers, Inc.*, 530 Pa. 250, 608 A.2d 485 (1992), to find that appellant is a "manufacturer" for purposes of the good faith requirement of subsection 4–431(d)(3). We disagree.[11]

The plaintiff in *McKeesport* was a licensed importing distributor of malt and brewed beverages who held the exclusive distributing

rights for the products of the defendant, All Brand Importers, Inc., in all of Westmoreland, Greene, Washington, and Fayette Counties, and in a portion of Allegheny County. The plaintiff sought an injunction to preclude termination of its exclusive distribution agreement with the defendant. The Supreme Court found that the injunction had been properly denied, finding that good cause to terminate the agreement had been established. However, in footnote one of the opinion written by Justice Larsen, the court noted that "[a]s an entity that has the contractual right to distribute malt beverages and that enters into agreements with licensed importing distributors, All Brand is a 'manufacturer' under the Liquor Code. 47 P.S. § 4–431(b)(1)." *Id.* at 252 n. 1, 608 A.2d at 486 n. 1.

There is, of course, no Section 4–431(b)(1) in the Code. The Court could have meant to refer to subsection 4–431(b.1)(3) which provides that the term "manufacturer" as used in subsection (b.1) includes any entity that "has the contractual right to distribute any malt beverage product ... who enters into

secondary importing distributor setting forth the terms and conditions under which such products are to be resold within the territory granted to the primary importing distributor by the manufacturer.
47 P.S. § 4–431(b).

**10.** Subsection 4–431(d)(2) provides:
**(2) After January 1, 1980, no manufacturer shall enter into any agreement with more than one distributor or importing distributor for the purpose of establishing more than one agreement for designated brand or brands of malt or brewed beverages in any one territory**. Each franchise territory which is granted by a manufacturer shall be geographically contiguous. All importing distributors shall maintain sufficient records to evidence compliance of this section. With regard to any territorial distribution authority granted to an importing distributor by a manufacturer of malt or brewed beverages after January 1, 1996, the records shall establish that each and every case of a brand of malt or brewed beverages for which the importing distributor is assigned was sold, resold, stored, delivered or transported by the importing distributor, either from a point or to a point within the assigned geographically contiguous territory, to any person or persons whether such person or persons are licensed by this act or not licensed by this act.
47 P.S. § 4–431(d)(2) (emphasis supplied).

**11.** This argument was apparently the basis, under the very limited standard of review applica-

ble to preliminary injunctions, upon which this Court affirmed the entry of the preliminary injunction. However, our review of the grant . . . of a preliminary injunction is limited to determining whether there were 'any apparently reasonable grounds' for the action of the trial court. *Singzon v. Commonwealth, Department of Public Welfare*, 496 Pa. 8, 10, 436 A.2d 125 126 (1981). *See Sovereign Bank v. Harper*, 449 Pa.Super. 578, 674 A.2d 1085, *allo. denied*, 546 Pa. 695, 687 A.2d 379 (1996). We will interfere with the trial court's decisions regarding a preliminary injunction only if there exists no grounds in the record to support the decree, or the rule of law relied upon was palpably erroneous or misapplied. *Singzon*, supra at 10–11, 436 A.2d at 126–27. It must be stressed that our review of a decision regarding a preliminary injunction does not reach the merits of the controversy. *WPNT Inc. v. Secret Communication Inc.*, 443 Pa.Super. 269, 272, 661 A.2d 409, 410 (1995). Instead, all that is reviewed is whether the party seeking the show that substantial legal questions must be resolved to determine the rights of the respective parties. *Chmura v. Deegan*, 398 Pa.Super. 532, 535, 581 A.2d 592, 593 (1990). *See Valley Forge Historical Society v. Washington Memorial Chapel*, 493 Pa. 491, 426 A.2d 1123 (1981).

*All–Pak, Inc. v. Johnston*, —— Pa.Super. ——, ——, 694 A.2d 347, 350 (1997) (footnote omitted).

an 'agreement' with any licensed importing distributor...." The Court could also have meant to refer to subsection 4–431(b), which has no numbered subparagraphs and which provides, *inter alia:*

> Each out of state manufacturer of malt or brewed beverages whose products are sold and delivered in this Commonwealth shall give distributing rights for such products in designated geographical areas to specific importing distributors and such importing distributor shall not sell or deliver malt or brewed beverages manufactured by the out of state manufacturer to any person issued a license under the provisions of this Act whose licensed premises are not located within the geographic area for which he has been given distributing rights by such manufacturer.

47 P.S. 4–431(b). In any event, we find that the reference in footnote one is irrelevant to our disposition here since what was *not* at issue in *McKeesport* was whether All Brands Importers Inc., an *importer* of foreign malt and brewed beverages, was a manufacturer, or the agent of a manufacturer for *all* purposes under the Liquor Code. All Brands was *not* licensed, as is appellee, as an importing distributor, thus *precluding* it from being licensed as a manufacturer. *See:* 47 P.S. § 4–438(c); 47 P.S. § 4–443(a). Moreover, All Brands was the original *importer* of foreign beers which had designated McKeesport as its exclusive importing distributor in the designated territory. Thus, All Brands was a "manufacturer" and did not dispute that, under the provisions of the Liquor Code, when viewed as a whole, with each section read with reference to and in light of the other sections of the Code, as the importer of foreign malt and brewed products it was to be treated as a manufacturer for *all* purposes under the Code.[12]

We conclude that, under well-settled principles of statutory construction, the legislature did not intend the special definition of "manufacturer" contained in Subsection 4–431(b.1) to be utilized in any subsection of the Code other than that subsection and thereby vacate the permanent injunction and the award of damages and direct that judgment be entered in favor of appellant Penn Distributors, Inc.

Order and judgment vacated. Case remanded. Jurisdiction relinquished.

---

**12.** This conforms with the provisions of Subsection (d)(3) which makes reference to the purchaser of assets of a manufacturer "as defined in this act" rather than "in this subsection". *See also:* 47 P.S. § 4–443(g) which provides in relevant part: "the term 'manufacturer' as used *in this section* shall include manufacturers of malt or brewed beverages as defined in this act and any person manufacturing any malt or brewed beverages outside of this Commonwealth".